798 So.2d 227 (2001)
STATE of Louisiana
v.
James McCRANEY.
No. 01-KA-439.
Court of Appeal of Louisiana, Fifth Circuit.
September 25, 2001.
*229 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Counsel for James McCraney, Defendant-Appellant.
Paul D. Connick, Jr., District Attorney, Parish of Jefferson, State of Louisiana, Thomas J. Butler, Terry M. Boudreaux, Assistant District Attorneys, Nancy A. Miller, Lisa Schneider, Trial Counsel, Gretna, LA, Counsel for the State of Louisiana, Plaintiff-Appellee.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
Defendant appeals his sentence for distribution of cocaine in a drug free zone. We affirm the sentence, but remand for correction of a patent error.
On October 4, 2000, the Jefferson Parish District Attorney filed a bill of information charging James McCraney with violation of La.R.S. 40:981.3 by distribution of cocaine within 1,000 feet of the Williams Playlot on or about September 6, 2000. McCraney entered a plea of not guilty on October 6, 2000.
The defendant was tried by a twelvemember jury on December 5 and 6, 2000. In an eleven-to-one vote, the jury found the defendant guilty of distribution of cocaine within 1000 feet of school property. Defendant filed a motion for new trial, which was denied on January 26, 2001. On the same date, defendant was sentenced to 22 years at hard labor, with credit for time served, and with the first five years of the sentence to be served without benefit of parole, probation, or suspension of sentence.
Defendant's motion to reconsider sentence was denied and he filed this appeal.

FACTS
The testimony and evidence at trial were as follows:
On September 6, 2000, at approximately 6:00 p.m., Agent Louise Stone, Lieutenant Emile Lawson, and Agent William Meetze of the Jefferson Parish Sheriffs Office Narcotics Division conducted an undercover narcotics operation in Bunche Village in Jefferson Parish. They were responding to complaints of narcotics trafficking in the area of the Williams Playlot on Mistletoe Street in Bunche Village.
Each member of the team was driving a separate unmarked vehicle. Agent Stone drove to the intersection of Mistletoe and Wilson Streets. Lieutenant Lawson and Agent Meetze, who were acting as cover for Stone, parked their vehicles at a service station at Lester Street and Airline Highway, across Airline from Mistletoe.
Stone's vehicle was equipped with a video camera to record the transaction and a transmitter in order that the other officers could hear the events as they occurred. Stone had secured pre-recorded currency for the transaction. While parked on the gravel shoulder of the road near the intersection of Mistletoe and Wilson, Stone observed *230 the suspect in a nearby group of people.
She signaled the suspect and he walked to her vehicle. She asked him for a "20." The suspect, who was dressed in a white T-shirt with an emblem of "Cool 105.7" on it and a pair of blue jeans, left the vehicle and went back to the nearby group. When he returned to the car he gave a package to Stone and she paid him $20.00.
Agent Stone left the scene and radioed information about the transaction and the suspect to Lawson and Meetze. She traveled to a pre-arranged location, where she met with Meetze and gave him the package she had purchased. Meetze fieldtested it and found it positive for cocaine.
Lieutenant Lawson drove from his surveillance position across Airline and down Lester toward Mistletoe. He saw the suspect, who was riding a bicycle on Wilson Street towards Airline Highway. Lawson stopped the suspect in the 1400 block of Wilson Street for questioning. Lawson requested identification from the suspect and performed a check for outstanding warrants. Lawson took a digital photograph of the suspect before releasing him.
After the operation was over, the officers discovered that the video camera in Stone's vehicle had malfunctioned. Meetze used the digital photograph to prepare a photographic line-up. On September 8, 2000, Stone identified a photograph from the lineup as the suspect, later identified as James McCraney.
Seth Simpson, a zone manager for the Jefferson Parish Department of Parks and Recreation, testified that the Parish owns and operates the Williams Playlot at 7422 Mistletoe Street and that it was so operated on September 6, 2000.
Edward Dunn testified he is employed in the Jefferson Parish Sheriffs Office crime laboratory, where he performs analysis and identification of controlled dangerous substances. After being accepted as an expert, he testified he tested the rocklike substances in State's Exhibit 2 and found the material positive for cocaine. He identified State's Exhibit 3 as the report he generated on his testing.
Terry Alario, an investigator for the Jefferson Parish District Attorney's office, testified he went to the scene of the crime, Wilson and Mistletoe Streets, to measure the distance between the playground and the site at which the alleged offense occurred. He identified the area from several photographs that were placed in evidence. He identified a diagram he made of his measurements, State's Exhibit 8, showing that the distance from the intersection of Wilson and Mistletoe to the first corner of the playground was 369 feet and to the farthest corner of the playground was 471 feet. From the intersection of Dilton and Mistletoe to the first corner of the playground was 677 feet. From the intersection of Elm Street and Mistletoe to the first point of the playground was 1,000 feet.

ASSIGNMENT OF ERROR NUMBER ONE

The trial court imposed an excessive sentence.
Defendant was convicted of distribution of cocaine, a violation of La.R.S. 40:967(B)(4)(b), within 1,000 feet of school property, a violation of La.R.S. 40:981.3. Defendant contends that his 22-year sentence is constitutionally excessive.
A conviction for distribution of cocaine carries a sentence of imprisonment at hard labor for not less than five years nor more than 30 years, with the first five years being served without benefit of parole, probation or suspension of sentence. The court may also impose a fine of not more *231 than $50,000.00. La.R.S. 40:967(B)(4)(b). La.R.S. 40:981.3 provides in pertinent part:
A. (1) Any person who violates a felony provision of R.S. 40:966 through R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.[1]
The penalty provision of La.R.S. 40:981.3 is as follows, in pertinent part:
E. (1) On a first conviction, whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and not less than one-half nor more than the maximum term of imprisonment authorized by the applicable provisions of R.S. 40:966 through R.S. 40:970, with the minimum mandatory term of imprisonment being served without benefit of parole, probation, or suspension of sentence, provided in no case shall the term of imprisonment be less than the minimum term provided in R.S. 40:966 through R.S. 40:970.
Construing this provision with La. R.S. 40:967(B)(4)(b), we conclude that the court was required to sentence this defendant, as a first time offender under La. R.S. 40:981.3, to a fine of $50,000 and imprisonment for a term between 15 and 30 years, with 15 years being served without benefit of parole, probation or suspension of sentence.
Following defendant's conviction, the trial judge ordered a pre-sentence investigation. A copy of the report forms a part of the record and was considered by the trial judge. The report indicates that, in addition to the present offense, defendant has one earlier felony drug conviction and was arrested on eight prior occasions. He was charged with a total of 17 offenses in these arrests. Six of the offenses involved firearms charges, three were for drug-related offenses (one of which resulted in the felony conviction mentioned above), five were for crimes against persons, and three for crimes against property. The charges were refused in all these arrests, except for the drug felony.
At the sentencing hearing the court heard argument from defense counsel and the State, as well as a statement from the defendant.
In defendant's statement to the court, he indicated that certain charges in the report "were not his." He told the court that his neighbors considered him a kind and helpful person. When asked by the court about several separate incidents involving his illegal discharge of a firearm, defendant told the court that "this is what the police do when they add on charges," but the charges were later dropped.
Prior to sentencing the defendant, the trial court judge indicated that he had heard the case, listened to all the arguments and read the pre-sentence investigation report in arriving at the sentence. The court then sentenced the defendant to 22 years of imprisonment and ordered the first five years of the sentence be served without benefit of parole, probation, or suspension of sentence. The court did not impose a fine. The sentence was within the mandatory sentencing range prescribed by statute.
*232 In defendant's motion to reconsider sentence, he alleged that the sentence was constitutionally excessive. On appeal, defendant asserts that the sentence is excessive and does not pass constitutional muster because it was imposed merely due to the neighborhood where the transaction occurredthat is, it occurred within 1,000 feet of a school playground.
The State asserts that the defendant has failed to demonstrate abuse of discretion by the sentencing court and that the sentence imposed was less than that recommended in the pre-sentence report.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992).
In reviewing a sentence for excessiveness, this Court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. Lobato, supra, at 751. A sentence within statutory limits will not be set aside as excessive absent manifest abuse of discretion. Id.
On appellate review of sentence, the only relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608.
The statute under which defendant was prosecuted, La.R.S. 40:981.3, has previously been attacked constitutionally as constituting cruel and unusual punishment. In State v. Brown, 94-1290 (La.1/17/95), 648 So.2d 872, 877, reh'g denied, 1995 Lexis 757 (La.3/23/95), the Louisiana Supreme Court sustained the statute as constitutional. The court stated, in pertinent part:
Defendants' contention that the penal provisions of R.S. 40:981.3 are excessive is without merit. The range of penalties provided by R.S. 40:891.3 is not unconstitutionally excessive. The penalties contribute to acceptable goals of punishment and are not grossly disproportionate to the severity of the offense in general.
La.R.S. 40:981.3 was enacted "to define and provide for zones within which the commission of certain criminal activities shall result, upon conviction, in increased penalties ..." Thus it is clear that the purpose of the provision is to enhance the penalties for the drug-related felony offenses which occur near schools. [Citations omitted.]
This Court has previously upheld sentences of 15 years of imprisonment for commission of this offense. In those cases, the defendant did not have a criminal history. See State v. Bartley, 00-1370 (La.App. 5 Cir. 2/14/01), 782 So.2d 29; State v. Curtis, 97-769 (La.App. 5 Cir. 2/11/98), 707 So.2d 1328.
The sentence imposed was within statutory limits. Further, considering the gravity of the offense and the defendant's extensive prior criminal history, the sentence of 22 years of imprisonment is neither excessive nor an abuse of the trial court's discretion.
Finally, we note as a patent error that the sentence actually is illegally lenient in several respects. Under the mandatory language of La.R.S. 40:981.3, the trial court was required to impose the *233 maximum fine (i.e., $50,000). In this case, no fine was imposed. However, "[a]n appellate court may not correct a patent error which is favorable to the sole appellant in a criminal appeal." State v. Payn, 95-2166 (La.1/26/96), 666 So.2d 661, citing State v. Fraser, 484 So.2d 122 (La.1986).
The sentence was also illegally lenient because the trial court ordered that only five years be served without benefit of parole, probation or suspension of sentence. The requirement in La.R.S. 40:981.3(E)(1) that a "minimum mandatory term of imprisonment" be served without benefit of parole, probation or suspension of sentence, refers to the minimum term required by the drug-free zone statute and not any other statute (i.e., La.R.S.40:967). State v. Hensley, 606 So.2d 13, 14 (La.App. 5 Cir.1992). Accordingly, the minimum term of imprisonment that was to be served without benefit of parole, probation or suspension of sentence was 15 years, not the five-year term ordered by the trial judge.
La.R.S. 15:301.1(B) provides for amendment of sentence to conform with an applicable statutory provision, if the court acts on its own motion or if the district attorney seeks the amendment; subsection D of this statute, however, requires such action to be taken within 180 days of the initial sentence. In this case, that time has expired. Although the trial judge should have stated that 15 years of defendant's sentence were to be served without benefits, we will not amend the sentence on our own motion because more than 180 days have passed since defendant's initial sentence. See State v. Barroso, 99-1297 (La.App. 5 Cir. 5/17/00), 762 So.2d 206, 217.
Since the prosecution neither objected to the sentence at trial nor appealed on the issue, we will not correct the illegally lenient sentence imposed. State v. Fraser, 484 So.2d 122 (La.1986).[2]

ASSIGNMENT OF ERROR NUMBER TWO

Assigned as error are all errors patent.
Pursuant to our usual procedure, we reviewed the record for errors patent. See La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We found several patent errors, but only one that requires correction.
First, the bill of information omitted citation of a necessary statute. La.R.S. 40:981.3 provides in pertinent part:
A. (1) Any person who violates a felony provision of R.S. 40:966 through *234 R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E. [Emphasis added.]
The bill charged that defendant violated La.R.S. 40:981.3 by distribution of cocaine within 1000 feet of a playground, but failed to cite the statute under which distribution of cocaine is a violation, La.R.S. 40:967.
However, error in citation of the statute which the defendant is alleged to have violated, or its omission, is not ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice. La.C.Cr.P. art. 464.
In this case, the bill of information clearly states the nature of the offense. The record reveals that the State engaged in "open file" discovery. The defendant has neither noted the omission nor alleged any prejudice from it. Further, at trial defendant appeared to be fully cognizant of the offense with which he was charged. Under these circumstances, no further action is required by this Court.
The second patent error is that the sentence imposed was illegally lenient. That error is discussed under Assignment of Error Number One, above.
A third patent error is that the defendant was sentenced on January 26, 2001, the same day that the trial court denied his motion for a new trial. The trial court thus failed to observe the required 24 hour delay between denial of the motion for new trial and the imposition of sentence. La. C.Cr.P. art. 873.
Our review of the transcript, however, indicates that the defendant, when asked by the court, responded that he was ready for sentencing. This Court has held that such a statement constitutes a waiver of the delay in sentencing; thus, no error results from the trial court's immediate imposition of sentence. State v. Pugh, 99-851 (La.App. 5 Cir. 12/21/99), 750 So.2d 313, 317-318, writ denied, 00-0206 (La.8/31/00), 766 So.2d 1273.
The final patent error is that the trial court judge did not inform the defendant of the prescriptive period for filing for post-conviction relief, as required by La. C.Cr.P. art. 930.8. Our usual method of correcting this problem is to remand the case to the district court with appropriate instructions.
For the foregoing reasons, the defendant's conviction and sentence are affirmed. The case is remanded; the district court is ordered to send written notice of the prescriptive period under La.C.Cr.P. art. 930.8 to the defendant within ten days of the date of this decision and to file written proof of such notice into the record.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] The statute defines "school property" in pertinent part as "all property used for school purposes, including but not limited to school playgrounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility." La.R.S. 40:981.3(C)(2).
[2] In addition, La.R.S. 40:981.3(E) provides in subparagraph (2) that "on a second or subsequent conviction," the offender "shall be punished by the imposition of the maximum fine and maximum term of imprisonment" applicable under La.R.S. 40:966 through La.R.S. 40:970, without benefit of parole, probation, or suspension of sentence. The provision defines "second or subsequent offense" as being where, "prior to the commission of such offense, the offender had at any time been convicted of any felony violation of this state, the United States, any other state, or any foreign country, relating to an act prohibited by the Uniform Controlled Dangerous Substances Law." La.R.S. 40:981.3(E)(2).

Under the literal wording of La.R.S. 40:981.3(E)(2), defendant in this case could be considered a second offender and subject to the greater enhancement of sentence set out in that paragraph, because he has a prior felony drug conviction for possession of cocaine with intent to distribute. However, because that conviction occurred in 1987, prior to addition of La.R.S. 40:981.3 to the Uniform Controlled Dangerous Substances Law, the ex post facto clauses of the federal and state constitutions prohibit application of the enhanced penalty provision of Paragraph (E)(2). See State ex rel. Olivieri v. State, 00-172 (La.2/21/01), 779 So.2d 735, 743.